**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MAZELL YORK and MICHAEL MCDONALD,**

**Plaintiffs,**

**vs.** **1:20-cv-01616 (MAD/ML)**

**CITY OF JOHNSTOWN, CITY OF JOHNSTOWN POLICE DEPARTMENT, BLAINE WALKER, and JASE KOLLAR,**

**Defendants.**

---

**APPEARANCES:** **OF COUNSEL:**

**LAW OFFICE OF DANIEL R. SMALLS, PLLC** **DANIEL ROMEO SMALLS, ESQ.**
251 State Street, Suite 202
Schenectady, New York 12305
Attorneys for Plaintiffs

**MURPHY BURNS LLP** **THOMAS K. MURPHY, ESQ.**
407 Albany Shaker Road
Loudonville, New York 12211
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On December 29, 2020, Plaintiffs Mazell York ("Plaintiff York") and Michael McDonald ("Plaintiff McDonald") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants City of Johnstown (the "City"), City of Johnstown Police Department (the "Johnstown Police Department"), Police Officer Blaine Walker ("Officer Walker"), and Police Officer Jase Kollar ("Officer Kollar"). *See* Dkt. No. 1. Plaintiffs' amended complaint asserts five causes of action under Section 1983: (1) the unlawful seizure of Plaintiffs in violation of the

Fourth and Fourteenth Amendments against Officer Walker; (2) intentional infliction of emotional distress against Officer Walker and Officer Kollar;[1] (3) failure to intervene against Officer Kollar; (4) malicious prosecution against the City, Officer Walker, and Officer Kollar; and (5) municipal liability against the City and the Johnstown Police Department. *See* Dkt. No. 24 at ¶¶ 44-85.

Presently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 46. For the following reasons, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

On December 30, 2019, at approximately 4:13 p.m., Plaintiff York was sitting in the driver's seat of his car, parked in front of a residence on Byard Street in the City of Johnstown. *See* Dkt. No. 46-9 at ¶ 1. Plaintiff York's vehicle had an object—a "replica water buoy"—hanging from his rearview mirror. *See id.* at ¶ 14. As Plaintiff York was sitting in his car, Plaintiff McDonald exited the front door of the Byard Street residence and began walking towards Plaintiff York's vehicle. *See id.* at ¶ 2. Officer Walker, who was driving down Byard Street in a marked vehicle, observed Plaintiff McDonald approaching the vehicle from the Byard Street residence and parked his police vehicle in a nearby parking lot where he could observe Plaintiffs. *See id.* at ¶¶ 3, 8. Officer Walker was familiar with Plaintiff McDonald through his work as a police officer, and knew that he had prior arrests and convictions for narcotic-related

[1] Plaintiffs make repeated reference to a Defendant "Doe" throughout the amended complaint. *See generally* Dkt. No. 24. The Court believes that these references are accidental remnants of the original complaint, which asserted claims against a "City of Johnstown Police Officer John Doe." *See* Dkt. No. 1 at ¶ 4. That officer was later identified as Officer Kollar. *See* Dkt. No. 24 at ¶ 4. Accordingly, the Court treats all references to Defendant Doe in the amended complaint as references to Officer Kollar.

crimes. *See id.* at ¶ 4.[2]

Plaintiff McDonald returned to the Byard Street residence for a short period of time, and then reemerged and entered the front passenger seat of Plaintiff York's vehicle. *See id.* at ¶ 10. Plaintiff York, with Plaintiff McDonald as a passenger, then pulled away from the curb and began traveling westbound on Byard Street. *See id.* at ¶ 11. When Plaintiff York turned onto North Perry Street, Officer Walker initiated a traffic stop and pulled Plaintiffs over. *See* Dkt. No. 47 at 4. During the traffic stop, Officer Walker ordered Plaintiff York out of the vehicle and questioned both Plaintiffs. *See id.* at 5. At some point during the traffic stop, Officer Kollar arrived on the scene to assist Officer Walker. *See* Dkt. No. 46-9 at ¶ 19. Ultimately, Officer Walker issued Plaintiff York a traffic ticket for violating New York Vehicle and Traffic Law ("VTL") § 375(30), and concluded the stop without arresting either Plaintiff. *See* Dkt. No. 46-9 at ¶ 20.

VTL § 375(30) makes it

> unlawful for any person to operate a motor vehicle with any object placed or hung in or upon the vehicle ... in such a manner as to obstruct or interfere with the view of the operator through the windshield, or to prevent him from having a clear and full view of the road and condition of traffic behind such vehicle.

The traffic ticket was subsequently dismissed by Johnstown City Court. *See* Dkt. No. 46-10 at 14 n.2.

Defendants now move for summary judgment, arguing that (1) Officer Walker had probable cause for the traffic stop; (2) Plaintiffs fail to allege a claim for malicious prosecution,

[2] Plaintiff McDonald had been convicted of criminal possession of a controlled substance in 2014 and criminal possession of marihuana in 2018. *See* Dkt. No. 46-9 at ¶ 5. Two months after the events of this action, Plaintiff McDonald was convicted again of criminal possession of a controlled substance. *See id.* at ¶ 6.

intentional infliction of emotional distress, and municipal liability; (3) Officer Kollar had no obligation to intervene; and (4) both Officer Walker and Officer Kollar are entitled to qualified immunity. *See* Dkt. No. 46-10. In opposition, Plaintiffs argue that (1) there is a question of fact concerning whether Officer Walker had probable cause for the traffic stop; (2) Plaintiffs have stated a claim for municipal liability; and (3) Officer Walker and Officer Kollar are not entitled to qualified immunity. *See* Dkt. No. 47-2.

## III. DISCUSSION

### A. Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322

F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson*, 477 U.S. at 252). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B. Unlawful Seizure / False Arrest**

"To prevail on a claim of false arrest under New York law, the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018) (citing *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975)). Defendants concede the first three elements of the claim. As to the fourth element, "[a]n arrest of a criminal suspect by a law enforcement officer with probable cause is a 'privileged' confinement even if it is non-consensual." *McKay v. City of New York*, 32 F. Supp. 3d 499, 505 (S.D.N.Y. 2014). Thus, "'[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "The burden of

establishing the absence of probable cause rests on the plaintiff." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007) (citing *Brown v. City of New York*, 306 F. Supp. 2d 473, 479 (S.D.N.Y. 2004)).

"The Fourth Amendment permits brief investigative stops, including traffic stops, when 'a law enforcement officer has a particularized and objective basis'—also known as a 'reasonable suspicion'—to 'suspect[ ] the particular person stopped of criminal activity.'" *United States v. Churchill*, 792 Fed. Appx. 39, 41 (2d Cir. 2019) (quoting *Navarette v. California*, 572 U.S. 393, 396–97 (2014)). "[R]easonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). "While the reasonable suspicion standard requires 'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause,' ... it does entail 'some minimal level of objective justification.'" *United States v. Diaz*, 802 F.3d 234, 238-39 (2d Cir. 2015) (quotations omitted); *see also United States v. Patterson*, 25 F.4th 123, 135-36 (2d Cir. 2022).

Here, the Court cannot conclude that Officer Walker had reasonable suspicion to suspect Plaintiff York of violating VTL § 375(30) because there is conflicting testimony on Officer Walker's ability to see the object hanging from the vehicle's rearview mirror prior to the traffic stop. Officer Walker testified that, "[a]s the vehicle approached [his] position" in the Johnstown Area Volunteer Ambulance Corps parking lot, he "observed an orange or red spherical object hanging from the rearview mirror of the vehicle ... which obstructed [Plaintiff York's] view of the roadway." Dkt. No. 46-4 at ¶ 25. Plaintiff York, on the other hand, testified that the distance between the two cars and the light from the vehicles' headlights would have made it impossible for Officer Walker to see an object hanging from the rearview mirror prior to the traffic stop.

Dkt. No. 47-3 at ¶ 13. The Court cannot make a credibility determination or choose between conflicting versions of events on summary judgment. *See Jeffreys*, 426 F.3d at 553-54.

Defendants argue that, in any event, Officer Walker is shielded from liability by the doctrine of qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 54, 60-61 (2d Cir. 2009)). "Where, as here, qualified immunity is asserted at the summary judgment stage, a court may grant judgment if it is clear—after viewing the facts in the light most favorable to plaintiff—that reasonable law enforcement officers could have disagreed about whether defendants' conduct violated the law." *Ozga v. Elliot*, 150 F. Supp. 3d 178, 189 (D. Conn. 2015) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015)); *see also Cox v. Village of Pleasantville*, 271 F. Supp. 3d 591, 614 (S.D.N.Y. 2017) ("When analyzing an officer's claim for qualified immunity in the context of an investigatory stop, the Court must examine whether '(a) it was objectively reasonable for the officer[s] to believe reasonable suspicion existed or (b) officers of reasonable competence could disagree on whether the reasonable suspicion test was met'") (quotation omitted). "For a right to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question 'beyond debate' in the particular factual context at issue." *Kerr v. Morrison*, 664 Fed. Appx. 48, 51 (2d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, the Court holds that Officer Walker is not shielded from liability under the doctrine

of qualified immunity. Crediting Plaintiffs' testimony that Officer Walker was unable to see the object hanging from the vehicle's rearview mirror before he pulled Plaintiffs over, the only remaining grounds for suspecting Plaintiffs of criminal activity available to Officer Walker was that he had (1)"personally interacted with [Plaintiff] McDonald on several occasions" and "was aware that he had a history of arrests and convictions for the possession of illegal narcotics"; (2) "observed [Plaintiff] McDonald look up and show a surprised expression upon seeing [the] marked police vehicle" which Officer Walker characterized "as his 'jaw dropping'"; and (3) observed Plaintiff McDonald return to the residence before entering and departing in the vehicle. Dkt. No. 46-4 at ¶¶ 20-21, 24. The Court finds that no officer of reasonable competence could disagree about whether the knowledge of a criminal history and observing a "surprised expression" provided objectively reasonable grounds for a suspicion of illegal activity. *See Vasquez v. Maloney*, 990 F.3d 232, 239 (2d Cir. 2021) ("Although it is well settled that police officers may reasonably consider a person's criminal history as part of the total mix of information guiding their reasonable suspicion analysis, it has been equally well settled since at least 1977 that seeing a person with a criminal record in a public place, with nothing more, does not give rise to reasonable suspicion that the person has engaged or is engaging in further criminal activity"); *United States v. Swindle*, 407 F.3d 562, 569 (2d Cir. 2005) ("[T]he officers had merely observed an unidentified black man drive up to the drug house in a Bonneville (a model the police associated with [a wanted drug dealer]), enter the house, leave a short while later and then drive away. This is not enough information on which to reasonably order a person to stop").

Accordingly, Defendants' motion for summary judgment on Plaintiffs' first cause of action for unlawful seizure is denied.

**C. Failure to Intervene**

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). To establish a claim of failure to intervene a plaintiff must prove:

> "(1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene."

*Butchino v. City of Plattsburg*, No. 8:20-CV-796, 2022 WL 137721, *6 (N.D.N.Y. Jan. 14, 2022) (quotation omitted).

Even assuming that Officer Walker committed a constitutional violation against Plaintiffs and that Officer Kollar had a reasonable opportunity to intervene, no reasonable jury could find under the uncontroverted facts of this case that Officer Kollar knew of, or deliberately ignored, Officer Walker's alleged constitutional violation. Officer Kollar's involvement with the traffic stop underlying this action began *after* Officer Walker pulled over Plaintiffs' vehicle, when he heard over the police radio that Officer Walker had conducted a traffic stop of a vehicle on North Perry Street. *See* Dkt. No. 46-8 at ¶ 8. When Officer Kollar arrived, Officer Walker informed him that he had conducted the traffic stop due to a violation of VTL § 375(30), whereupon Officer Kollar looked into Plaintiffs' vehicle and observed that there was, in fact, an object hanging from the vehicle's rearview mirror. *See id.* at ¶¶ 11-12. Officer Kollar testifies that the

hanging object appeared to obstruct a driver's view of the roadway. *See id.* at ¶ 12.[3] In sum, there is no evidence in the record that Officer Kollar had any reason to know or suspect that Officer Walker may have used the object hanging from the mirror as an after-the-fact pretext to justify his traffic stop.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' third cause of action for failure to intervene is granted.

**D. Intentional Infliction of Emotional Distress**

As a preliminary matter, "intentional infliction of emotional distress 'is not a cognizable constitutional claim'" under Section 1983. *Scott v. City of Rochester*, No. 17-CV-6311, 2019 WL 4016165, *4 (W.D.N.Y. Aug. 26, 2019); *see also Slater v. Mackey*, No. 12-CV-04325, 2015 WL 6971793, *9 (E.D.N.Y. Nov. 10, 2015); *Anderson v. City of New York*, No. 13-CV-1745, 2013 WL 6182675, *3 (S.D.N.Y. Nov. 19, 2013). Thus, to the extent that Plaintiffs intend to assert this claim under Section 1983[4] against Officers Walker and Kollar, the claim must be dismissed.

It is possible that Plaintiffs intend to assert this claim under state law. "[U]nder New York law, an intentional infliction tort may 'be invoked only as a last resort,' ... 'to provide relief in those circumstances where traditional theories of recovery do not.'" *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (quotations omitted). Thus, "[c]laims for intentional infliction of

---

[3] Although Plaintiffs flatly deny these facts in their response to Defendants statement of material facts, *see* Dkt. No. 47 at 3, they offer no grounds for doing so. *See* Local Rule 56.1(b) ("Each denial shall set forth a specific citation to the record where the factual issue arises"). Nor do Plaintiffs offer any alternative view of Officer Kollar's involvement in the traffic stop in their testimony, *see generally* Dkt. Nos. 46-2, 46-3, 47-3, 47-4; and fail to even address this claim in their memorandum of law, *see generally* Dkt. No. 47-2.

[4] The amended complaint places "42 U.S.C. § 1983" immediately before Plaintiffs' cause of action for intentional infliction of emotional distress, but does not otherwise state the intended grounds for this claim. *See* Dkt. No. 24 at ¶¶ 48-55. Plaintiffs' opposition to this motion does not directly address this claim. *See generally* Dkt. No. 47-2.

emotional distress must be dismissed where ... the conduct underlying the claim may be redressed by way of traditional tort remedies such as battery, false arrest, and malicious prosecution." *Kirk v. Metro. Transp. Auth.*, No. 99-CIV-3787, 2001 WL 258605, *8 (S.D.N.Y. Mar. 14, 2001) (citations omitted); *see also Salmon*, 802 F.3d at 256 ("[T]he New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.' All four Appellate Division courts have answered the question and held that it cannot") (quotation omitted); *Dayes v. Watertown City Sch. Dist.*, No. 5:20-CV-964, 2021 WL 4407385, *10 (N.D.N.Y. Sept. 27, 2021). Because the allegations underlying Plaintiffs' intentional infliction of emotional distress claim are the same as those supporting their false arrest claim, this cause of action must be dismissed under state law.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' second cause of action for intentional infliction of emotional distress is granted.

**E. Malicious Prosecution**

"To prevail on a § 1983 claim for malicious prosecution, 'a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law.'" *Azeez v. City of New York*, 790 Fed. Appx. 270, 274 (2d Cir. 2019) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). To establish a malicious prosecution claim under New York law, a plaintiff must prove "'(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'" *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)). "For a malicious

prosecution claim under Section 1983, a plaintiff also must demonstrate a 'sufficient post-arraignment liberty restraint.'" *Id.* at 162 (quotation omitted).

Plaintiffs have, at a minimum, failed to satisfy the first and third elements of their claim. Initially, Plaintiff York[5] cannot show that a criminal prosecution was commenced against him because "traffic infractions are not a crime." *Azeez*, 790 Fed. Appx. at 274 (citing VTL § 155 ("A traffic infraction is not a crime")). Even assuming that traffic infractions could constitute a criminal prosecution against Plaintiff York, Officer Walker had probable cause to issue Plaintiff York a traffic ticket for violating VTL § 375(30).[6] "'Probable cause exists when 'the facts and circumstances within ... the [police] officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Meyers v. City of New York*, 812 Fed. Appx. 11, 14 (2d Cir. 2020) (quotation omitted). Plaintiff York acknowledges that he had an object hanging from his rearview mirror at the time of the traffic stop and that Officer Walker observed it before he issued the traffic ticket. *See* Dkt. No. 47 at 5. Officer Walker's contemporaneous belief that this object obstructed Plaintiff York's view is sufficient for the purposes of probable cause; an officer need not conclusively prove a violation of VTL § 375(30) before he issues a traffic ticket.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' fourth cause of action for malicious prosecution is granted.

---

[5] To the extent that Plaintiffs seek to allege a malicious prosecution claim on behalf of Plaintiff McDonald, that claim must be dismissed. The traffic ticket forming the basis of the malicious prosecution claim was only issued against Plaintiff York.

[6] The Court notes that whether Officer Walker had probable cause to issue Plaintiff York a traffic ticket is a separate issue from whether Officer Walker had probable cause to believe a criminal activity had occurred when he pulled over Plaintiffs' vehicle.

**F. Municipal Liability**

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Matusick v. Erie County Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones*, 691 F.3d at 80; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that under Section 1983 governmental bodies are not vicariously liable for their employees' actions); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Thus, "to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and '(1) the existence of a municipal policy or custom ... that caused his injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.'" *Lapoint v. Vasiloff*, No. 1:15-CV-185, 2016 WL 951566, *6 (N.D.N.Y. Mar. 9, 2016) (quoting *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011)). "Municipal liability can be established in a case such as this in several different ways, including through proof of an officially adopted rule or widespread, informal custom demonstrating 'a deliberate government policy or failing to train or supervise its officers.'" *Bruker v. City of New York*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003)).

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("'[T]he mere assertion ... that a municipality has such a custom or policy is

insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference'") (quotation omitted); *see also Zherka v. City of New York*, 459 Fed. Appx. 10, 12 (2d Cir. 2012). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citation omitted); *see also Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012).

The Court holds that Plaintiffs have not stated a claim for municipal liability under Section 1983. Plaintiffs' claim appears to be premised on two theories: First, that the Defendant Officers were acting pursuant to an expressly adopted official policy of the Johnstown Police Department, *see* Dkt. No. 24 at ¶ 75; and second, that the Johnstown Police Department has a longstanding and widespread practice or custom of, among other things, utilizing pretextual traffic stops on minorities. *See id.*at ¶ 76. However, Plaintiffs have not identified or provided any official policy of the Johnstown Police Department, let alone one that permits or encourages officers to conduct pretextual traffic stops on minorities.[7] Furthermore, Plaintiffs do not identify any examples of unconstitutional traffic stops by Johnstown Police Department other than (1) the traffic stop that underlies their claim, and (2) a single prior traffic stop between Plaintiff McDonald and Officer Walker. *See* Dkt. No. 46-3 at 34-36. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL

[7] It appears that Plaintiffs' counsel has "serve[d] no discovery demands and conducted no depositions." Dkt. No. 46-10 at 20.

1451405, *9 (S.D.N.Y. May 9, 2022) ("Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]'") (quotation omitted); *Murphy v. City of Elmira*, No. 6:18-CV-06572, 2020 WL 709610, *3 (W.D.N.Y. Feb. 12, 2020) (holding that a plaintiff's allegations that focused "solely on his own experiences" were "plainly insufficient under *Monell*").

Accordingly, Defendants' motion for summary judgment on Plaintiffs' fifth cause of action for municipal liability is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 46) is **GRANTED in part** and **DENIED in part**;[8] and the Court further

**ORDERS** that Defendants **City of Johnstown**, **City of Johnstown Police Department**, and **Police Officer Jase Kollar** are **DISMISSED** from this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 21, 2022
Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[8] As a result of this Memorandum-Decision and Order, Plaintiffs' only remaining claim is their first cause of action for unlawful seizure against Officer Walker.